IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Donald Markay, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER ON MOTIONS TO DISMISS** |
| vs. | ) | **OR TRANSFER** |
| | ) | |
| Leading Solutions, Inc., Douglas Goodrum, | ) | Civil No. 3:06-cv-105 |
| Nacogdoches Oil & Gas, LLC, and Michael | ) | |
| Finley, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are two Motions to Dismiss filed by Defendants (Docs. #6, #31).

Defendants Nacogdoches Oil & Gas, LLC ("Nacogdoches"), and Michael Finley filed a motion to

dismiss or transfer the action (Docs. #6, #10).  Likewise, Defendants Leading Solutions, Inc.

("Leading Solutions"), and Douglas Goodrum also filed a motion to dismiss or transfer the action

(Docs. #31, #32).  Plaintiff Donald Markay filed briefs in opposition to both motions (Docs. #19,

#39).  The Court has carefully considered the numerous briefs and documents filed by the parties

and now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes it has specific personal jurisdiction over all Defendants, and therefore

Defendants' Motions to Dismiss for lack of personal jurisdiction are DENIED.  Furthermore, the

Court finds that venue in this Court is proper, so Defendants' Motions to Dismiss for improper

venue are DENIED, and Defendants' Motions to Transfer under 28 U.S.C. § 1404(a) are DENIED.

1

## STATEMENT OF FACTS

For purposes of the motions to dismiss for lack of personal jurisdiction, the Court must view the evidence in the light most favorable to Markay, the nonmoving party.  See Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).  Thus, the Court's statement of the facts is written from that perspective.

The parties to this action are citizens of several different states.  Markay is a resident of Fargo, North Dakota.  Leading Solutions is a corporation organized under the laws of the State of Oregon, with its principal place of business located in Portland, Oregon.  Goodrum is a resident of Oregon and the president of Leading Solutions.  Nacogdoches is a limited liability company organized under the laws of the State of Kansas, with its principal place of business located in Texas. Finley is a resident of Texas and the manager of Nacogdoches.

On March 1, 2000, Leading Solutions and Nacogdoches entered into a "Selling Agreement" regarding an oil and gas production project in Kansas called the "Cherryvale Waterflood Project." Finley Aff. Ex. B.  Leading Solutions agreed to use its best efforts to sell up to a 4% working interest in the project.  With regard to payment, the agreement provided as follows:

> The Parties agree that the purchase price to Leading Solutions for each one half of one percent (.005%) [sic] working interest shall be twenty five thousand dollars ($25,000.00).  The Parties agree that Leading Solutions shall accept working interest purchases for the Project and shall be responsible for paying Nacogdoches Oil and Gas / Mike Finley for the working interest sold.

Finley Aff. Ex. B ¶ 1.  The agreement further provided that "Leading Solution's [sic] shall serve as the sole Agent only to those working interest owners in the project who purchased working interest [sic] through Leading Solutions Inc."  Id. ¶ 4.  In return, Nacogdoches agreed to use its best efforts

in operating the project and to provide periodic progress reports and monthly net income distributions to Leading Solutions.  Id. ¶¶ 5-7.

Sometime after Leading Solutions entered into the selling agreement with Nacogdoches, Markay received a mailed advertisement from Leading Solutions at his residence in North Dakota. In the advertisement, Leading Solutions sought investors for an oil and gas production project in Kansas called the "Cherryvale Waterflood Project."  According to the advertisement, anyone interested in the project was to contact Leading Solutions.

In the summer of 2000, Markay contacted Leading Solutions to obtain additional information about the Cherryvale Project.  During this time, Markay and Goodrum had multiple telephone conversations, some of which were initiated by Goodrum.  In response to Markay's inquiry, Leading Solutions mailed a thirty-four-page packet of promotional information to Markay in North Dakota. See Compl. Ex. A.  In the promotional packet, Leading Solutions offered investors up to a 4% working interest in the Cherryvale Project, with each .50% interest requiring an investment of $50,000.  The packet stated that Nacogdoches would conduct project operations, and Finley would serve as operator.  One page of the packet included a four-sentence quote from Finley about fair treatment of the working interest owners.  Leading Solutions provided a resume of Finley's qualifications, along with resumes of several others involved in the project.  The packet also contained a project description and summary provided by the operator, Nacogdoches, which included detailed technical information about the project.  According to Markay, Leading Solutions also mailed him videotapes of Finley discussing the project as part of the promotional materials. Markay Aff. ¶ 3.

After reviewing the promotional materials, Markay decided to invest in the Cherryvale Project. On September 14, 2000, Markay entered into a written "Agency Agreement" with Leading Solutions to purchase a .50% working interest for $50,000. <u>See</u> Compl. Ex. B. On October 3, 2000, Markay entered into a second written "Agency Agreement" with Leading Solutions to purchase another .50% working interest for $50,000.[1] Under the agreements, Leading Solutions was to act as an agent for Markay and had "the authority to act in Principal's behalf in all necessary matters relating to the Program." Compl. Ex. B ¶ 6. Leading Solutions agreed to use its best efforts to enforce the rights of Markay under the agreement. <u>Id.</u> ¶ 5. The agreements also provided that they were to be governed by Oregon law. <u>Id.</u> ¶ 11.

On October 24, 2000, after Markay had purchased his working interest, Markay visited the Cherryvale Project in Kansas and met with Goodrum. On October 25, 2000, Markay and Goodrum met with Finley at his vacation home in Texas and discussed the Cherryvale Project for approximately three hours. At that time, Finley provided Markay with two written geological evaluations about the project.

Over the next five years, Markay received approximately ten reports about the Cherryvale Project through the mail at his home in North Dakota.[2] Leading Solutions mailed eight of these project reports to Markay, which were prepared in a substantially similar fashion. Leading Solutions wrote a cover letter printed on paper with Leading Solutions letterhead. On one occasion, this cover

---

[1] As exhibits to his Complaint, Markay submitted two agency agreements which are dated September 14, 2000 (Docs. #1-6, #1-7). Markay apparently neglected to submit a copy of the agreement dated October 3, 2000. However, Defendants do not dispute the existence of the second agency agreement.

[2] Markay received project reports in letters dated November 29, 2000; January 11, 2001; April 9, 2002; October 4, 2002; October 14, 2003; February 19, 2004; September 29, 2004; November 26, 2004; May 31, 2005; and September 27, 2005.

letter was signed by Goodrum.  Compl. Ex. D at 1.  Leading Solutions then provided a project report prepared by Finley as manager for Nacogdoches.  Leading Solutions always forwarded a verbatim copy of Finley's reports to Markay.  In the first report dated November 29, 2000, Leading Solutions also enclosed a thirty-minute audio tape containing a discussion with Finley about the project.

In addition to the eight reports from Leading Solutions, Markay received two reports directly from Finley.[3]  On September 27, 2002, Finley called Markay in response to a letter from Markay seeking an update on the project.  Several days later, Finley mailed a project report from Texas to Markay in North Dakota.  According to Markay, Finley also mailed another project report dated September 29, 2004, directly to him.[4]

Markay received his last project update from Leading Solutions on September 27, 2005.  Shortly afterward, Markay learned from Kansas authorities that no water had been flooded into the wells of the Cherryvale Project, which contradicted project information provided by Defendants.  Additionally, Markay discovered that Leading Solutions and Goodrum had been ordered to cease and desist from selling unregistered securities in Oregon and violating Oregon securities laws.

On December 8, 2006, Markay filed a Complaint against Defendants asserting seven causes of action (Doc. #1).  Count One alleges fraudulent practices in connection with the offer, sale, and purchase of the working interest in the Cherryvale Project under the Securities Act of the North Dakota Century Code.  Count Two alleges breach of the agency agreements between Markay and Leading Solutions.  Count Three alleges Defendants committed actual fraud to induce Markay to

---

[3] Nacogdoches and Finley state that they have no record or recollection of sending anything to Markay in North Dakota.  Finley Aff. ¶ 10.

[4] In his affidavit, Markay implies that Finley sent another project report directly to him in September 2005.  However, this report was apparently forwarded to Markay as part of a letter from Leading Solutions on September 27, 2005.  See Compl. Ex. L at 1-2.  Therefore, the Court does not consider this report a direct contact from Finley.

enter into the agency agreements.  Count Four alleges breach of fiduciary duties arising from the

agency agreements between Markay and Leading Solutions.  Count Five alleges constructive fraud

for breaching fiduciary duties by misleading Markay about the project.  Count Six alleges that

Defendants committed deceit to induce Markay to enter into the agency agreements.  Finally, Count

Seven alleges conversion for not returning Markay's investment pursuant to his demand.  In his

request for relief, Markay seeks economic damages, punitive damages, and recission of the agency

agreements.

## **DISCUSSION**

All Defendants have moved to dismiss the action for lack of personal jurisdiction and

improper venue.  In the alternative, Defendants have moved to transfer the action to the District of

Kansas under 28 U.S.C. § 1404(a).[5]

## **I.  Personal Jurisdiction**

Defendants argue they do not have sufficient minimum contacts with the State of North

Dakota to establish personal jurisdiction.  Because Defendants do not have identical contacts with

the forum, the Court will consider whether there is personal jurisdiction as to Leading Solutions and

Goodrum, and then as to Nacogdoches and Finley.

In order to defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party

must make a prima facie showing of jurisdiction over the defendant.  Romak USA, Inc. v. Rich, 384

F.3d 979, 983 (8th Cir. 2004).  The nonmoving party may meet its burden of proof by presenting

affidavits, exhibits, or other evidence.  Id. at 983-84.  For the purposes of a prima facie showing, the

---

[5] The Court will not address the parties' arguments regarding the first-to-file rule, as that issue is moot in light of the District of Kansas's dismissal of Nacogdoches and Finley's declaratory judgment action as an improper anticipatory filing.  See Nacogdoches Oil & Gas, LLC v. Leading Solutions, Inc., No. 06-2551-CM, 2007 U.S. Dist. LEXIS 60867 (D. Kan. Aug. 17, 2007).

court must view the evidence in the light most favorable to the nonmoving party and resolve all factual conflicts in its favor.  Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

A federal court in a diversity action may exercise jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and the Due Process Clause. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).  The North Dakota Supreme Court has held that North Dakota's long-arm provision, N.D.R.Civ.P. 4(b), is "designed to permit the state courts to exercise personal jurisdiction to the fullest extent permitted by due process." Beaudoin v. S. Tex. Blood & Tissue Ctr., 2005 ND 120, ¶ 10, 699 N.W.2d 421, 425 (citation omitted).  Because the North Dakota long-arm provision confers jurisdiction to the fullest constitutional extent, this Court's sole inquiry is whether the exercise of personal jurisdiction comports with due process.  See Dever, 380 F.3d at 1073.

The Due Process Clause requires that there be sufficient "minimum contacts" between the nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)).  In order to satisfy the "minimum contacts" standard, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Ferrell v. W. Bend Mut. Ins. Co., 393 F.3d 786, 790 (8th Cir. 2005) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The defendant's contacts and connection with the forum must be sufficient that it "should reasonably anticipate being haled into court there." Stanton, 340 F.3d at 693 (quoting World-Wide Volkswagen, 444 U.S. at

297).  The defendant must not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or because of the unilateral activity of another person.  Id. at 693-94 (quotations omitted).

In this case, Plaintiff argues only that the Court has specific jurisdiction over Defendants, not general jurisdiction.  See Pl.'s Br. Opp'n Mot. to Dismiss at 8, Mar. 26, 2007.  Specific jurisdiction exists only if the cause of action is related to or arises out of the defendant's contact with the forum state.  Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006) (quotations omitted).  Thus, in order for a court to have specific jurisdiction, the defendant must have purposefully directed its activities at forum residents, and the litigation must result from injuries arising out of or relating to those activities.  Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1103 (8th Cir. 1996).

The Eighth Circuit has instructed courts to consider five factors in a personal jurisdiction inquiry:  (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.  Stanton, 340 F.3d at 694 (citation omitted).  The first three factors are of primary importance, and the last two are secondary factors.  Id.  Because the first three factors are closely intertwined, they may be considered together.  Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

Although the general principles governing personal jurisdiction are well-established, the resolution of an inquiry into personal jurisdiction necessarily depends on the facts of each case.  As the Eighth Circuit has stated, "Determining the propriety of jurisdiction at a particular place always

8

involves applying principles of fairness and reasonableness to a distinct set of facts, and the determination is not readily amenable to rigid rules that can be applied across the entire spectrum of cases." Anderson v. Dassault Aviation, 361 F.3d 449, 452 (8th Cir. 2004).  With this in mind, the Court turns to an examination of factually similar cases.

The Eighth Circuit has held that contact by telephone or mail, without more, is generally insufficient to justify the exercise of personal jurisdiction under the Due Process Clause.  See Johnson, 444 F.3d at 955.  However, the lack of physical presence in a forum cannot alone defeat jurisdiction. Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (stating that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines").  Indeed, the Eighth Circuit has recognized that mail or phone communications may justify the exercise of personal jurisdiction when the communications themselves gave rise to the cause of action.  See Firetti, 236 F.3d at 943; Finley v. River N. Records, Inc., 148 F.3d 913, 916-17 (8th Cir. 1998).

In Oriental Trading Co. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001), the defendants argued they did not have sufficient minimum contacts with Nebraska because they only made phone calls and faxes to plaintiff there.  In their communications, defendants provided fraudulent information about the amount of money plaintiff owed them for customs duties, and plaintiff paid the money relying on that information.  Id.  After discovering the scheme, plaintiff sued for fraud, negligent misrepresentation, and conversion. Id. at 941.  The Eighth Circuit concluded the Nebraska court had personal jurisdiction over defendants.  Id. at 943.  "By purposely directing their fraudulent communications at residents of Nebraska, the defendants should have realized that the brunt of the

harm would be felt there, and they should have reasonably anticipated being haled into court there." Id. (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Similarly, in Finley v. River North Records, Inc., 148 F.3d 913, 916 (8th Cir. 1998), plaintiff alleged that defendant River North Records committed fraud when it misrepresented which artists would appear at a concert in order to induce plaintiff to promote it.  River North sent promotional materials into Arkansas and confirmed over the telephone which artists would appear at a concert there.  Id.  The Eighth Circuit held there was specific personal jurisdiction over River North in Arkansas because it directed fraudulent materials and communications into the forum with the intent of inducing commercial activity there.  Id.; see also Neal v. Janssen, 270 F.3d 328, 333 (6th Cir. 2001) (holding there may be personal jurisdiction "when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action"); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999) (stating that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment").

## A.  Leading Solutions and Goodrum

Applying these principles to the case at hand, the Court concludes it has specific personal jurisdiction over Leading Solutions and Goodrum.  Leading Solutions solicited Markay's investment in the Cherryvale Project through a mailed advertisement to Markay's home in North Dakota.  In response to Markay's request for additional information, Leading Solutions mailed a thirty-four-page packet of information about the project to Markay in North Dakota.  In his complaint, Markay alleges that this promotional packet contained fraudulent misrepresentations which were designed to induce his investment in the project.  Once Markay decided to invest in Cherryvale, Leading

10

Solutions entered into two "Agency Agreements" with Markay, in which Markay purchased a 1% working interest in the project for $100,000.  In the agency agreements, Leading Solutions agreed to be Markay's agent with regard to the Cherryvale Project, which contemplated a systematic, ongoing business relationship with a North Dakota resident.  In the performance of these contractual duties, Leading Solutions and Goodrum mailed approximately eight project reports to Markay in North Dakota, which Markay also alleges contained fraudulent misrepresentations about the project.

Several, if not all, of Markay's causes of action against Leading Solutions and Goodrum arise directly out of their contacts with Markay in North Dakota.  Leading Solutions and Goodrum purposefully directed promotional materials and project reports at Markay in North Dakota.  Based upon information contained in these materials and reports, Markay alleges that Leading Solutions and Goodrum fraudulently induced him to enter into the agency agreements and breached their fiduciary duties by making material misstatements of fact.  If Leading Solutions and Goodrum purposefully directed fraudulent materials and communications to Markay in North Dakota, they should have reasonably anticipated that they might be held accountable for that fraud and misrepresentation in North Dakota.  Therefore, the Court concludes it has specific personal jurisdiction over Leading Solutions and Goodrum.

### B.  Nacogdoches Oil & Gas and Finley

Whether the Court has personal jurisdiction over Nacogdoches and Finley is a closer question.  Specific jurisdiction exists only if the cause of action is related to or arises out of the defendant's contact with the forum.  Here, Markay's complaint contains causes of action which all focus on either fraudulent inducement to enter into the "Agency Agreements," or breach of fiduciary duties arising from those agency agreements.  However, Markay entered into the agency agreements

with Leading Solutions, not Nacogdoches and Finley.   Therefore, it is difficult to see how Nacogdoches and Finley could   breach any fiduciary duties to Markay arising from those agreements.

Furthermore, although Finley called Markay in North Dakota at least once and mailed him two project reports, these contacts with North Dakota occurred long after Markay had purchased a working interest in the Cherryvale Project.  These contacts simply could not have induced Markay to invest in the Cherryvale Project.[6]  The only contacts which Nacogdoches and Finley had with North Dakota prior to Markay's purchase of the working interest occurred through the unilateral activity of Leading Solutions and Goodrum.  Leading Solutions solicited Markay's investment through a targeted mailing to North Dakota.  In furtherance of this solicitation, Leading Solutions mailed a promotional packet of information to Markay which named Nacogdoches and Finley as the project operators and included a four-sentence quote from Finley, a resume of Finley's qualifications, and a project description and summary prepared by Nacogdoches.  According to Markay, Leading Solutions also mailed him videotapes of Finley discussing the project in these promotional materials.  Although Nacogdoches and Finley are featured at some length in the promotional materials, they did not send the materials into North Dakota to induce Markay's investment.  Based solely on these facts, the Court could not conclude that Markay's causes of action arose from Nacogdoches and Finley's contacts with North Dakota.

_____

[6] In an affidavit filed with the Court, Markay advances the theory that he was fraudulently induced to retain the investment, which would implicate later contacts of Nacogdoches and Finley.  Markay states that he would have disposed of the interest and purchased different, more profitable investments if he had known the truth.  See Markay Aff. ¶ 10.  However, Markay's complaint does not contain such a claim.  Furthermore, if Markay's allegations against Defendants are true, his investment was a fraud.  Once Markay knew about the fraud, he would have had a duty to disclose it to any subsequent purchasers, and thus the working interest would have been unmarketable.

However, Markay also argues that Leading Solutions and Goodrum were acting as agents for Nacogdoches and Finley under the selling agreement executed by those parties.  Thus, Markay contends the contacts of Leading Solutions and Goodrum should be imputed to Nacogdoches and Finley for purposes of personal jurisdiction.

Courts may exercise personal jurisdiction over a defendant through the acts of its agent. Romak USA, Inc. v. Rich, 384 F.3d 979, 985 (8th Cir. 2004); see also Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 523-24 (8th Cir. 1996) (stating that contacts with the forum which are made on behalf of the defendant may be considered).  Although the parties have raised and argued the agency issue in their briefs, the parties do not address which substantive law this Court should apply in deciding whether an agency relationship exists.  It is well-established that a federal district court must apply the conflict of laws rules of the state in which it sits.  See Modern Leasing, Inc. v. Falcon Mfg. of Cal., Inc., 888 F.2d 59, 62 (8th Cir. 1989).  In cases involving multistate contacts, the North Dakota Supreme Court applies the "significant contacts test" to determine choice of law.  Nodak Mut. Ins. Co. v. Wamsley, 2004 ND 174, ¶¶ 12-13, 687 N.W.2d 226, 231.

However, after a careful review of agency law in each of the states connected with this controversy, the Court finds there is no true conflict because the result would not differ.  Therefore, the Court declines to engage in a choice of law analysis.  See Barbara Oil Co. v. Kan. Gas Supply Corp., 827 P.2d 24, 31 (Kan. 1992) (defining agency as "a contract, either express or implied, by which one of the parties confides to the other the management of some business to be transacted in the party's name, or on the party's account, and by which that other assumes to do the business and to render an account of it"); Auction Effertz, Ltd. v. Schecher, 2000 ND 109, ¶ 9, 611 N.W.2d 173,

177 (defining agency as "a relationship which results when one person, the principal, authorizes another, the agent to act for him in dealing with third persons"); Hampton Tree Farms, Inc. v. Jewett, 892 P.2d 683, 694 (Or. 1995) (defining agency as "the relationship which results from the manifestation of consent by one person to another that the other shall act on [his] behalf and subject to his control, and consent by the other so to act").

The Kansas Supreme Court has broadly interpreted the concept of agency, as illustrated by In re Scholastic Book Clubs, Inc., 920 P.2d 947, 955 (Kan. 1996). In Scholastic, the court held that Kansas teachers were the implied agents of Scholastic because the teachers sent orders and payments from students on to Scholastic and distributed Scholastic's merchandise after shipping. Id. at 955-56. The court stated, "Whether one is the agent of another for a specific purpose depends upon whether he or she has power to act with reference to the subject matter." Id. at 955.

The North Dakota Supreme Court has expressly held that "[a]n authorization for a party to sell the property of another creates an agency relationship." See Auction Effertz, ¶ 9, 611 N.W.2d at 177 (involving an agreement to facilitate the sale of cattle). The court has noted that "[t]he existence and scope of a fiduciary duty depends upon the terms of the parties' agreement." Id.

Finally, Oregon courts have also recognized the intersection of sales contracts and agency. In Erickson Hardwood Co. v. N. Pacific Lumber Co., 690 P.2d 1071, 1075-77 (Or. Ct. App. 1984), the Oregon Court of Appeals considered whether a contract established a sales agency. In reaching its holding, the court noted that it is common for contracts to have aspects of both an exclusive agency contract and an arm's length sales contract. Id. at 1077. The court quoted with approval a passage from the Tenth Circuit:

> Contracts of this kind are quite common. Sometimes they have been referred to as creating the relation of principal and agent and sometimes that of buyer and seller.

14

> But it is now well settled that such contracts create a dual relationship between the parties. In some aspects it is that of principal and agent and in some that of vendor and vendee. It is not altogether one to the exclusion of the other.

Id. (quoting Cowley v. Anderson, 159 F.2d 1, 3 (10th Cir. 1947)).

In this case, the Court concludes that, viewing the facts in a light most favorable to Markay, Leading Solutions and Goodrum were acting as agents for Nacogdoches and Finley with respect to sales of working interests in Cherryvale. The "Selling Agreement" executed by the parties provided that Leading Solutions was to use its best efforts to sell up to a 4% working interest in the Cherryvale Project. Leading Solutions was to pay Nacogdoches $25,000 for each .50% interest. The agreement further provided, "The parties agree that Leading Solutions shall accept working interest purchases for the Project and shall be responsible for paying Nacogdoches Oil and Gas / Mike Finley for the working interest sold." As a working interest, "by transaction," was purchased from Nacogdoches and Finley, Nacogdoches was to promptly issue a document acknowledging the sale and the deposit of funds. Once funding was complete, a title transfer for the entire interest was to be made to Leading Solutions.[7]

Under the terms of the selling agreement, the parties intended that Leading Solutions and Goodrum would solicit sales of working interests in the Cherryvale Project on behalf of Nacogdoches and Finley. Leading Solutions did not acquire title to the 4% working interest outright. Rather, Leading Solutions was to sell working interests to third parties, and then send payment on to Nacogdoches and Finley. Nacogdoches and Finley continued to own the working

---

[7] In his affidavit, Finley states that Leading Solutions and Goodrum paid for a 5% working interest at the time the parties entered into the selling agreement, and the interest was transferred to Leading Solutions at that time. Finley Aff. ¶ 13. Finley states this arrangement was made "per the terms of the Selling Agreement." Id. However, the Court cannot find any language in the selling agreement to that effect. At any rate, this factual conflict must be resolved in favor of Markay for purposes of the motion to dismiss for lack of personal jurisdiction.

interest until funding was complete.  This arrangement indicates the existence of an agency relationship.  The fact that Leading Solutions was also an agent for Markay is not dispositive, as a person or entity may be the agent of multiple parties in a single transaction.  See Miller v. Mill Creek Homes, Inc., 97 P.3d 687, 689 (Or. 2004).  Furthermore, from the content of Finley's project reports, and the fact that he directly forwarded two of these reports to Markay, it is clear Finley was aware that his reports were being read by those working interest owners who purchased their interests through Leading Solutions.  This further supports the position that Leading Solutions and Goodrum were acting on behalf of Nacogdoches and Finley when they sold working interests in Cherryvale.

Although some terms of the selling agreement are more like those of arm's length sales contract, such as the disclaimers of liability, this does not mean the agreement is a sales contract to the exclusion of an agency relationship.  Here, based on all the terms of the selling agreement, the Court finds that Leading Solutions and Goodrum were acting as agents for Nacogdoches and Finley when they solicited Markay's investment in the Cherryvale Project and sent him promotional materials for that purpose.  Therefore, for purposes of personal jurisdiction, the contacts of Leading Solutions and Goodrum may be imputed to Nacogdoches and Finley.  Because the Court has already concluded it has specific personal jurisdiction over Leading Solutions and Goodrum, it necessarily follows that the Court has personal jurisdiction over Nacogdoches and Finley.  Defendants' Motions to Dismiss for lack of personal jurisdiction are denied.

## II.  Improper Venue

In the alternative, Defendants have moved to dismiss the action for improper venue under 28 U.S.C. § 1391(a).  Section 1391(a) provides:

16

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

If an action has been filed in an improper venue, the district court shall dismiss, or if it is in the interests of justice, transfer the action to any district in which it could have been brought. 28 U.S.C. § 1406(a).

Defendants argue that venue in this Court is improper because none of the three standards for venue have been satisfied. Clearly subsection (1) does not apply, as all Defendants in this action do not reside in the same state. However, Plaintiff argues that subsection (2) applies because a substantial part of the events or omissions giving rise to his claims occurred in North Dakota. The Eighth Circuit has stated that the inquiry under section 1391(a)(2) is not "which district among two or more potential forums is the 'best' venue." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003). Rather, the district court must ask "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Id.

Here, the Court concludes that North Dakota has a substantial connection to Plaintiff's claims. Plaintiff alleges that Defendants purposefully directed fraudulent communications to him in North Dakota with the purpose of inducing his investment in a sham oil production project. The conduct which gave rise to Plaintiff's claims occurred in Kansas, North Dakota, Oregon, and Texas, and it is arguable whether any of these other districts even have greater contacts with Plaintiff's claims than North Dakota. Defendants argue this action should be transferred to Kansas because the Cherryvale Project is located there. However, while Kansas may have a strong connection to

Plaintiff's claims, the Court concludes that Plaintiff's choice of forum, North Dakota, also has a substantial connection to the claims sufficient to lay venue here.  Therefore, Defendants' Motions to Dismiss for improper venue are denied.

### III.  Transfer of Venue under 28 U.S.C. § 1404(a)

Defendants have also moved to transfer this action to the District of Kansas under 28 U.S.C. § 1404(a).  Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   Under the plain statutory language, courts must consider three general categories of factors:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice.  However, district courts are not limited to an evaluation of these three factors when comparing alternative venues.  Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997).  Rather, "such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  Id.   Other relevant factors include:  (1) accessibility to records and documents; (2) the location where the conduct complained of occurred; (3) the applicability of each forum state's substantive law; (4) judicial economy; (5) the plaintiff's choice of forum; (6) the comparative costs to the parties of litigating in each forum; and (7) the advantages of having a local court determine questions of local law.  See id. at 696. Generally, "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  Id. at 695.

In this case, Defendants bear the burden of proving to the Court that the action should be transferred to the District of Kansas. After consideration of the relevant factors, the Court is not persuaded that a transfer is warranted.

### A.  Convenience of the Parties

This action involves parties from four different states, Kansas, North Dakota, Oregon, and Texas. With regard to convenience of the parties, the balance does not favor either Plaintiff or Defendants, as at least two parties are bound to be inconvenienced by any particular location. There is no indication that any of the parties has substantially greater resources than the others such that travel to another forum would present minimal hardship. The Court recognizes that Plaintiff's choice of forum, North Dakota, is entitled to considerable deference.

### B.  Convenience of the Witnesses

Defendants argue this factor weighs in favor of transfer to Kansas because the Cherryvale Project is located there, and presumably there will be a number of witnesses who work or reside in Kansas. Plaintiff counters that the evidence in this case will consist primarily of documents and expert testimony, which may effectively be taken by deposition. Although some of the relevant witnesses and documents likely will be located in Kansas, it is equally likely that some witnesses and documents will be located in North Dakota. Because the conduct which gave rise to Plaintiff's complaint is scattered in four different states, some witnesses will be inconvenienced no matter where the action proceeds. The Court finds this factor does not favor either location.

### C.  Interests of Justice

Defendants argue this Court should transfer the action to the District of Kansas because of the parallel declaratory judgment action there. However, that action was recently dismissed.

Therefore, the Court finds that judicial economy does not require a transfer to Kansas.  Furthermore, with regard to comparative costs of litigation, the Court recognizes that Defendants will incur more costs than Plaintiff if they and their witnesses have to travel to North Dakota.  However, if the Court were to transfer the action to Kansas, all of the parties would have to travel there to litigate.  Although Nacogdoches is organized under the laws of the State of Kansas, and thus resides there for purposes of citizenship, its principal place of business and its manager Finley are located in Texas.  Therefore, the Court concludes this factor does not weigh in favor of transfer to Kansas.

Defendants also contend that issues involving choice of law weigh in favor of transfer.  However, the Court finds that the factors relating to choice of law do not favor either North Dakota or Kansas.  This case involves a complex combination of parties, states, and causes of action.  It is likely that any court which decides this action will apply the law of at least one other state.  For example, the "Agency Agreements" between Markay and Leading Solutions provide that they are to be governed by Oregon law.  Markay's complaint alleges a breach of North Dakota securities law.  Kansas law may well be applied to other issues under a choice of law analysis which applies the law of the state with the most significant contacts.

After evaluating all the relevant factors, the Court finds that most do not favor either Kansas or North Dakota.  Because of the many locations in which the conduct giving rise to this action occurred, some parties and witnesses will be inconvenienced no matter where the litigation proceeds.  In this situation, the Court is convinced that Plaintiff's choice of forum is entitled to deference.  In light of the foregoing analysis,  Defendants' Motions to Transfer to the District of Kansas are denied.

## <u>DECISION</u>

Defendants' Motions to Dismiss for lack of personal jurisdiction and improper venue are

**DENIED**.  Defendants' Motions to Transfer to the District of Kansas under 28 U.S.C. § 1404(a) are

**DENIED**.

**IT IS SO ORDERED.**

Dated this 26th day of September, 2007.


      /s/   Ralph R. Erickson      
Ralph R. Erickson, District Judge
United States District Court

21